<u>NOT FOR PUBLICATION</u>                                      (Doc. Nos. 22, 23)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| _____ | : | |
| CLAUDIA DIAZ, | : | |
| | : | |
| Plaintiff, | : | Civil No. 08-2543 (RBK/KMW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CEASAR PEREIRA, CHARLES A. | : | |
| HARRIS, ROOS FOODS, INC., | : | |
| PA AUTO GROUP, INC., and PA AUTO | : | |
| GROUP ENTERPRISES CORP., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon two motions for summary judgment, the first

filed by Defendant PA Auto Group Enterprises Corp., and the second filed by Defendants

Charles A. Harris and Roos Foods, Inc.  For the reasons expressed below, Defendant PA Auto

Group Enterprises Corp.'s motion is **GRANTED**, and Defendants Harris and Roos Foods, Inc.'s

motions for summary judgment are **DENIED**.

## I.      BACKGROUND

This case arises out of an automobile accident that occurred on December 27, 2007, near

the Walt Whitman Service Plaza in Moorestown, New Jersey.  As Defendant Ceasar Pereira

drove a 1990 Toyota pickup truck along the New Jersey Turnpike with Plaintiff Claudia Diaz as

his front-seat passenger, Pereira proceeded to exit from the Turnpike into the Service Plaza.

However, Pereira lost control of the vehicle as he drove onto the exit ramp.  The front of the

pickup truck then collided with the rear of a Freightliner tractor-trailer parked along the left side of the ramp.  The Freightliner was owned by Defendant Roos Foods, Inc. ("Roos") and operated by Defendant Charles A. Harris ("Harris").

Although Pereira owned the pickup truck, PA Auto Group Enterprises Corp. ("PA Auto") owned the license plates attached to the pickup truck at the time of the accident.  PA Auto is a used car lot that engages in the buying and selling of automobiles.  The license plates were registered to PA Auto as dealer plates.  Pereira, who was engaged in the business of purchasing and transporting automobiles, obtained the dealer plates from PA Auto.  Although the exact status of the relationship between PA Auto and Pereira is unclear, PA Auto permitted Pereira to use the dealer plates.  Further, Pereira made annual payments of $2,500 to PA Auto for the two-year period preceding the time of the accident.  The purpose of those payments is disputed.

On May 23, 2008, Plaintiff, who was allegedly injured by the collision, initiated a negligence action against Pereira, Harris, Roos, PA Auto, and PA Auto Group, Inc.  On July 23, 2008, Harris and Roos filed a crossclaim against Pereira.  On September 3, 2008, PA Auto and PA Auto Group, Inc. filed a crossclaim against Pereira, Harris, and Roos.

Two motions for summary judgment appear before the Court.  In respect to the first motion, PA Auto moved for summary judgment on December 3, 2009.  In respect to the second motion, Harris and Roos moved for summary judgment on December 11, 2009.  With the moving papers and the responses thereto presently before the Court, these motions are ripe for disposition.

## II.  STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or, by "'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Id.

## III.    DISCUSSION

With respect to PA Auto's motion, summary judgment is granted because Plaintiff failed to provide facts sufficient to demonstrate that there is a material issue of fact concerning whether a principal-agent relationship exists between Defendants Pereira and PA Auto.  With respect to Harris and Roos' motion, summary judgment is inappropriate because key factual matters remain disputed.  The Court will first address PA Auto's motion for summary judgment and then proceed to discuss Harris and Roos's motion for summary judgment.

Under the common law of New Jersey, the owner of a motor vehicle is not liable for the injuries caused by the negligence of the driver of the vehicle in the absence of an agency relationship.  Haggerty v. Cedeno, 653 A.2d 1166, 1167 (N.J. Sup. Ct. App. Div. 1995).   By contrast, in New York the owner of a vehicle is responsible for any death or injury caused by the negligence of the driver of the vehicle.  N.Y. Vehicle and Traffic Law § 388 (McKinney 1986) [hereinafter Section 388].  In sum, Defendant PA Auto argues that the New Jersey law should apply because the events giving rise to this dispute occurred in New Jersey; whereas, Plaintiff argues that New York law applies because New York has a strong public policy interest in protecting the victims of vehicle accidents caused by negligent drivers and preventing dealers from disclaiming liability for the injuries caused by the unlawful use of their license plates by third parties.

In a diversity case, a district court must apply the choice of law rules of the forum state.  Woessner v. Air Liquide, Inc., 242 F.3d 469, 472 (3d Cir. 2001) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Robertson v. Cent. Jersey Bank & Trust Co., 47 F.3d 1268, 1273 (3d Cir. 1995)).  Because this Court is located in New Jersey, New Jersey choice of law rules apply.

New Jersey has abandoned the *lex loci delicti* approach of the First Restatement of Torts.  See P.V. v. Camp Jaycee, 962 A.2d 453, 457 (N.J. 2008).  To resolve conflict disputes arising out of tort, New Jersey applies the "most significant relationship" test articulated in the Restatement (Second) of Conflict of Laws (the "Second Restatement").  Id.  The most significant relationship test differs from the pure governmental interest approach in that the former "does not focus solely on the state interests; instead, it directs courts to apply the law of the jurisdiction with the 'most significant relationship' to the issue before the court.  In making this

4

determination, the court is required to consider all the contacts that each jurisdiction has with the issue." Id. at 459 (citing Earl M. Maltz, Do Modern Theories of Conflict of Laws Work?  The New Jersey Experience, 36 Rutgers L.J. 527, 530 (2005)).

The New Jersey conflicts analysis can be broken down into a series of analytical steps. The first step requires the court to determine whether a true conflict exists. Id. at 460.  If the court is satisfied that a conflict exists, the analysis begins with the Second Restatement's presumption in personal injury cases that "the local law of the state of the injury will apply." See id. at 455.  The presumptive choice is then "tested against the contacts detailed in section 145 and the general principles outlined in section 6 of the Second Restatement." Id.  The presumption is overcome if another state has a more significant relationship to the parties or issues. Id.  Otherwise, the presumption governs. Id.

### A.    Actual Conflict

The first step in the conflicts analysis requires the Court to determine whether a true conflict exists between the relevant laws of New Jersey and the laws of New York.  The Court will find an actual conflict between New Jersey and New York law if it determines that "there is a distinction between them." See id. at 460 (internal quotation marks omitted) (quoting Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)).

In New York, the statutory rule is that a vehicle owner who permits a driver to operate a vehicle is responsible for the damage caused by the driver's negligence.  The applicable statute provides that "[E]very owner of a vehicle used or operated in [New York] shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner." Haggerty, 652 A.2d

at 1167 (citing N.Y. Vehicle and Traffic Law § 388 (McKinney 1986)).  New York has also adopted a common law rule that, "a registered owner who transfers a vehicle without removing the license plates is estopped against an injured third party from denying ownership."  Alvarado v. Cristal, 816 N.Y.S.2d 274, 275 (N.Y. App. Term 2006) (citing Dairlyea Co-op., Inc. v. Rossal, 473 N.E.2d 251, 255 (1984) and Matter of Allstate Ins. Co. v. Gemmell, 430 N.E.2d 1308 (1981)).  Furthermore, New York has made clear that an automobile dealer who allows a purchaser to use his dealer license plates unlawfully, may be held liable for damages caused by the negligent use of the vehicle.  See Reese v. Reamore, 55 N.E.2d 35 (1944).  Finally, in New York an automobile dealer is liable for the damages caused by a vehicle unlawfully bearing its license plates even if the plaintiff is unable to trace the *vehicle* directly to the dealer.  Jamison v. Walker, 369 N.Y.S.2d 469 (N.Y. App. Div. 1975).

By contrast, under New Jersey common law, "the owner of a motor vehicle is not liable for the negligence of a permissive user unless the driver is acting as the owner's agent or employee."  Fu v. Fu, 733 A.2d 1133 (N.J. 1999) (citing Haggerty, 653 A.2d at 1167).  In dicta, the New Jersey Supreme Court has also stated that New Jersey law does not conflict with the New York rule which "estops a dealer from denying that he was the *owner* of a car which he illegally permitted to be operated with his dealership's plates."  Eggerding v. Bicknell, 118 A.2d 820, 822 (N.J. 1956).  However, it is well-settled in New Jersey that an automobile dealer who unlawfully allows a third party to use its dealership plates in direct contravention of a statute that prohibits such conduct, is not liable for the tortious acts of the third party if no principal-agent relationship exists between the parties.  Burke v. Auto Mart, Inc., 117 A.2d 624 (1955).

In this case, there is a clear conflict between the laws of New York and New Jersey for the following reasons.  New York's Vehicle and Traffic Law imposes vicarious liability on the

owner of a motor vehicle who permits another to operate the vehicle irrespective of whether a

principal-agent relationship exists between the parties.[1]  In effect, an owner may be liable for the

negligent torts of an operator even though the owner has no relation to the driver, or the driver is

acting outside of the scope of his employment.  By contrast, in New Jersey in order for an

automobile dealership to be liable for the tortious conduct of a vehicle bearing its plates, there

must be a principal-agent relationship between the parties.  Burke, 117 A.2d at 628-29 (rejecting

plaintiff's theory that when an automobile dealership allows a customer to use its dealer plates in

violation of a state statute, the presumption that a principal-agent relationship arises).  Therefore,

because a plaintiff may recover against an automobile dealer who unlawfully permits a third-

party driver to use its dealer plates under the tort law of New York but a similarly-situated

plaintiff may not recover against a dealer in New Jersey without showing that a principal-agent

relationship exists between the parties, there is a clear distinction between the laws of New York

and New Jersey.  Accordingly, this Court determines that the laws of New York and New Jersey

conflict on the issue of liability, rendering appropriate a substantive conflicts analysis.

### B.     Presumptively Applicable Law

In personal injury cases, there exists in New Jersey a presumption that "the local law of

the state where the injury occurred determines the rights and liabilities of the parties . . . ."  P.V.,

962 A.2d at 459 (citing Restatement (Second) of Conflict of Laws § 146 (1971)).  In this case,

Plaintiff alleges in the Amended Complaint that she was injured while traveling on a public

thoroughfare in Moorestown, New Jersey.  Therefore, in this case the threshold presumption is

that New Jersey law governs.  This presumption applies with respect to Defendant PA Auto's

---

[1] See N.Y. Vehicle and Traffic Law § 388 (McKinney 1986) ("Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.").

motion for summary judgment unless the Court determines that a different state has a more significant relationship to the occurrence and the parties when analyzed in light of the principles articulated in Section 6 of the Second Restatement.  Only if this is so, will the presumption that New Jersey law applies yield.

### C.    Relevant Contacts

In determining whether New Jersey has a more significant relationship to this dispute, the Court must weigh the contacts listed in section 145 of the Second Restatement.  In particular, the court must consider: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.  Id. at 458 (citing Restatement (Second) of Conflict of Laws § 145(2)(a)-(d)).

In this dispute, New Jersey is both the place of the Plaintiff's alleged injury and the place of the wrongful conduct.  Generally, where "both conduct and injury occur in a single jurisdiction" the local law of that state will apply.  Id. at 462 (citing Fu, 733 A.2d at 1143). "That is so because 'a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there." Id.  In this case, the conduct – Defendant Pereira's allegedly negligent operation of a motor vehicle – and the injury – the physical injuries sustained by Plaintiff – both occurred in New Jersey.  These contacts indicate a strong link between this case and New Jersey.

The third category of contacts includes the domicile, residence, nationality, place of incorporation, and place of business of the parties.  The Amended Complaint alleges that the Plaintiff is a citizen and resident of New York.  This allegation is sufficient to establish a contact with New York.  The Amended Complaint further alleges that Defendant PA Auto is a corporate

citizen of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania. This allegation is sufficient to establish a contact with Pennsylvania. The Amended Complaint further alleges that Defendants, Pereira and Harris are citizens and residents of the State of Delaware. These allegations are sufficient to establish contacts with Delaware. Lastly, the Amended Complaint alleges that Defendant, Roos, is a corporate citizen of Delaware, has its principal place of business in Delaware, and derives substantial revenue from its business in Delaware. This is sufficient to establish contacts with Delaware.

The fourth category of contacts under the Court's consideration in this case is the place where the parties' relationship is centered. The allegations in the Amended Complaint demonstrate that the parties are related based upon the events that transpired in Moorestown, New Jersey. Although some of the events that led ultimately led to the collision may have occurred outside of New Jersey (the alleged relationship between Pereira and PA Auto) the parties' relationship commenced when the accident occurred in New Jersey on December 27, 2007.

In sum, New York's sole contact with this case is that it is the domicile of the Plaintiff. New Jersey's contacts with this state derive from the fact that it is the place of the allegedly wrongful conduct and the injury. Delaware's contacts with this case stem from the fact that Defendants Pereira and Harris are domiciliaries of Delaware and Defendant Roos is a corporate citizen of Delaware with its principal place of business in Delaware. Because New Jersey is the location of the injury and the conduct, as well as the place where the parties' relationship is centered, the contacts listed in section 145 of the Second Restatement weigh heavily towards applying New Jersey law to the facts of this case. The only contact New York has with this dispute is that New York is the plaintiff's domicile. From a quantitative perspective, New

York's contacts are insufficient to overcome the presumption that New Jersey law applies.  See P.V., 962 A.2d at 460 (observing that the number of contacts with a particular state may be persuasive).  However, because the New Jersey conflicts analysis is qualitative, and not merely quantitative, the Court must assess the identified contacts in light of the principles articulated in section 6 of the Second Restatement.  See id. Pfizer, Inc. v. Emp'rs Ins. of Wausau, 712 A.2d 634 (N.J. 1998) (quoting Veazey v. Doremus, 510 A.2d 1187, 1190 (N.J. 1986)).

### D.      Choice of Law Principles

The choice of law principles articulated by section 6 of the Second Restatement are: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interest of judicial administration; and (5) the competing interests of the states."  P.V., 962 A.2d at 463 (citing Erny v. Estate of Merola, 792 A.2d 1208, 1217 (N.J. 2002)).

### 1.      The Competing Interests of the States

When assessing the competing interests of the states, courts must first "consider whether application of a competing state's law under the circumstances of the case 'will advance the policies that the law was intended to promote.'"  Fu, 733 A.2d at 1142.  The applicable law may be either state common law or statutory law.  Id.  The court's initial inquiry should be on "what [policies] the legislature or court intended to protect by having that law apply to wholly domestic concerns, and then, whether those concerns will be furthered by applying that law to the multi-state situation."  Id.

New York has a legitimate interest in the fair compensation of its residents for injuries sustained as a result of negligent drivers.  Section 388 of the New York Traffic Law, which automatically imposes liability on the owner of a vehicle for the negligent conduct of the driver,

is designed to protect the innocent victims of automobile accidents by "assuring that there will be a financially responsible party who is available to answer in damages." Haggerty, 653 A.2d at 1168. Another stated purpose for Section 388 is to "discourage owners from lending their vehicles to incompetent or irresponsible drivers." Id. (quoting Report of the New York Law Revision Commission at 593 (1958)). New York courts have also adopted the position that an owner who registers a vehicle in his name may not escape liability for the negligent conduct of a driver by proving that he is not actually its owner. Shuba v. Greendonner, 2 N.E.2d 536 (1936). In Shuba, the court made clear that the policy underlying this principle is that the New York legislature "has been very specific in making rules for the purpose of facilitating identification of an owner by the police and public, fastening responsibility for injuries and requiring evidence of ability to respond in damages to injured persons . . . Strict regulations are enacted for the sale of an automobile and the registration thereof by the vendee and for the issuance and limited use of dealer's plates." Id. Thus, New York's law reflects a policy interest in ensuring that law enforcement officers can quickly identify the legal owner of a motor vehicle, assign responsibility for injuries in a vehicular accident and ensure that vehicle owners have the financial resources to compensate injured victims of torts.

In this case, New York has an interest in ensuring that it's resident, Plaintiff Diaz, is compensated for the injuries she sustained as a result of Defendant Pereira's allegedly negligent operation of a motor vehicle. Additionally, New York has an interest in discouraging vehicle owners from lending their vehicles to incompetent, or otherwise irresponsible drivers.

However, New York's interest in ensuring that its law enforcement officers can quickly identify the legal owner of a motor vehicle will not be furthered by applying the New York statute outside the state of New York. Although it is important for law enforcement officers in

New York to quickly identify the legal owner of a motor vehicle, when an accident occurs outside of New York by a vehicle that is registered in a foreign jurisdiction, New York's interest is significantly diminished.  However, New York does have an interest in protecting its citizens "by fastening responsibility for injuries and requiring evidence of ability to respond in damages to injured persons" in out-of-state vehicle accidents.  As such, the New York rule affords a measure of protection for New York tort victims.  Because Plaintiff is a citizen of New York, New York has an interest in the application of its statutory scheme to protect Plaintiff from what she perceives as the unfairness that may result from the application of the New Jersey law.

In this case, New Jersey has two distinct policy rationales for its common law tort rules.  First, the policy underlying the common law rule in New Jersey that the owner of a vehicle is not liable for the negligence of the driver of the vehicle, "is designed to shield an owner from liability in cases in which the owner has not been negligent and in which the culpable driver is not related to the owner in a way that will justify the imposition of vicarious liability under traditional principles of the law of agency or master servant."  Haggerty, 653 A.2d at 1169.  Furthermore, New Jersey has a significant interest in the rights of parties and insurers concerning a motor vehicle accident that occurs in New Jersey, as its "police, hospitals, insurance companies and courts all get involved regardless of the residence of one of the drivers."  D'Orior v. W. Jersey Health Sys., 797 F. Supp. 371, 375 (D.N.J. 1992).  This policy interest coincides with New Jersey's interest in the application of its law to Defendants who travel along the highways located on New Jersey soil.  The mere fact that neither Plaintiff nor the Defendants are residents of New Jersey does not negate the State's interest in regulating conduct on its highways and thoroughfares – especially where hundreds of New Jersey citizens frequently travel.

New Jersey courts have also applied Section 174 of the Second Restatement to determine which state's vicarious liability rules should apply to a personal injury dispute.  See Fu, 733 A.2d at 1143.  Section 174 provides that a majority of jurisdictions follow the rule that "vicarious liability will be imposed under the local law of the state of [the] conduct and injury if the tortfeasor entered the state on the instructions of the one sought to be held vicariously liable. The same will be true if the one sought to be held liable . . . had reason to foresee that the tortfeasor might enter the state . . . ."  Restatement (Second) of Conflict of Laws § 174 cmt. c (1971).  In this case, PA Auto granted Pereira the permission to use its plates.  Pereira then used the plates to conduct his business of purchasing and transporting vehicles down the New Jersey Turnpike.  Br. in Reply to Pl. and Co-Def.'s Opp'ns to Mot. for Summ. J. Ex. B, at 20.  It is reasonably foreseeable that a driver who operates a business of transporting vehicles down the New Jersey Turnpike, and is a citizen and resident of Delaware, will drive into the state of New Jersey.  Therefore, an application of section 174 of the Second Restatement weighs in favor of applying the New Jersey law to the facts of this case.

### 2.      The Interests of Interstate Comity

The interests of interstate comity attempts to "'further harmonious relations between the states and to facilitate commercial intercourse between them.'"  P.V., 962 A.2d at 466 (quoting Restatement (Second) of Conflict of Laws § 6 cmt. d).  This interest requires the Court to determine whether the "application of a competing state's law would frustrate the policies of other interested states."  Fu, 733 A.2d at 1141.  On these facts, the application of New Jersey law to a New York resident who accompanies a driver traveling into New Jersey will not hamper New York's efforts to protect the vast majority of New York plaintiffs.  Instead, allowing the New York law governing owners and drivers of motor vehicles to follow New York citizens as

they travel around the country would hamper New Jersey's efforts to apply its own tort laws to regulate conduct on its highways and thoroughfares.  Furthermore, applying New York's law to drivers in New Jersey will impede New Jersey's efforts to protect its citizens from liability for negligent operators in the absence of any fault on the part of the vehicle owners.

### 3.    The Interests of the Parties

In order to assess the interests of the parties, "courts must focus on their justified expectations and their needs for predictability of result."  <u>Pfizer</u>, 712 A.2d at 640.  The interests of the parties ordinarily plays a minor role in the choice of law analysis in the field of torts because negligent tortfeasors "usually act without giving thought to the law that may be applied to determine the legal consequences of [their] conduct."  Restatement (Second) of Conflicts of Law § 145 cmt. b (1971).  In this case, there is no evidence that Defendants Pereira, Harris, or Roos gave any thought to their allegedly negligent conduct on the date of the automobile accident.  Likewise, there is no evidence that Defendant PA Auto, acting through its President, Mr. Pinto, relied upon the laws of New Jersey, Pennsylvania, or New York when he allowed Pereira to use the dealership license plates.  Although Mr. Pinto presumably relied upon the protections of Pennsylvania law when allowing customers to use dealer license plates during the conduct of his car business, there is no evidence that Pereira was a customer of PA Auto.  Therefore, the interests of the parties is not a critical factor in the choice of law analysis.

### 4.    The Remaining Section 6 Principles

The parties do not argue, and this Court is not convinced, that the remaining section 6 principles indicate that New York has any greater connection to this case or to the parties.  New Jersey's vicarious liability rules governing automobile dealerships are not so complex and arcane that the Court will experience any difficulty applying them to the facts of this case.

Furthermore, Ms. Diaz has pointed to no reasonable expectation that New York law would apply to her activities in New Jersey.

In sum, New Jersey is the state with the most significant relationship to the parties and occurrences in this case. The majority of the section 145 contacts point toward the application of the law of New Jersey. An application of the principles articulated in Section 6 of the Restatement, also cuts in favor of applying New Jersey law to this dispute. New York's minor connection to this case as the domicile of the plaintiff is insufficient to overcome the presumption that the law at the sight of the injury applies.

## IV.    Defendant PA Auto's Motion for Summary Judgment

Defendant, PA Auto moves for summary judgment based on the argument that it cannot be vicariously liable for the negligence of Defendant Pereira because it did not own the 1990 Toyota pick-up truck. PA Auto also contends that an automobile dealer in New Jersey that allows a third party to use its dealership plates in violation of a statute governing such use is not liable for the negligent torts of the third party where there is no evidence that a principal-agent relationship exists.

Plaintiff argues that New Jersey applies the rule established in New York that an automobile dealership that unlawfully lends its dealership plates to a driver may not deny ownership of the vehicle and liability for the negligent torts of the driver, and therefore PA Auto is vicariously liable for the allegedly negligent conduct of Defendant Pereira. To support this argument, Plaintiff relies upon a host of New York precedent. For the reasons stated in Section A., New York law does not apply to this case. Plaintiff also argues in the alternative that even if the Court applies New Jersey law to this dispute, there is some evidence that New Jersey has adopted the position taken by the New York courts. Br. in Opp'n to Mot. for Summ. J. of Def.,

PA Auto Group Enter. Corp. 8.  In support of this argument, Plaintiff offers the New Jersey Supreme Court's decision in Eggerding v. Bicknell, 118 A.2d 820 (1956).  In Eggerding, the defendant car dealership sold a used Chrysler vehicle to a buyer but failed to properly transfer title in accordance with the applicable statutes in New Jersey.  Id. at 822-23.  Prior to the time when the dealership transferred title, the buyer's negligent operation of the vehicle caused injury to the plaintiff.  Id.  The issue before the New Jersey Supreme Court was whether the dealership's liability insurer was responsible for paying the damage award to the plaintiff.  The court concluded that the dealership's insurance policy covered the damages caused by the buyer's negligence.  Id. at 824.  In dicta, the Court noted that although New Jersey has "no legislation comparable to the New York statutory provision which imposes liability, even without any showing of agency, upon an owner whose car was being operated with his consent, there would seem to be no just reason for declining to invoke the wholesome New York view which prohibits or estops a dealer from denying that he was the owner of a car which he illegally permitted to be operated with his dealer's plates."  Id. at 822.  Plaintiff argues that this language suggests that "[w]ith respect to New Jersey law . . . there is some provision [sic] that if a dealer permits the use of his plates in deliberate violation of N.J. Rev. Stat. § 39:3-4 [sic], then he may not deny his ownership which he has falsely evidenced by permitting the unlawful use of his plates by another."  Br. in Opp'n to Mot. for Summ. J. of Def., PA Auto Group Enter. Corp. 9.

Plaintiff's argument fails for the following reasons.  First, Plaintiff fails to differentiate the Court's pronouncements in Eggerding with respect to *ownership* and *agency*.  In Eggerding, the court noted in dicta that there is "no just reason for declining to invoke the wholesome New York view which prohibits or estops a dealer from denying that he was the *owner* of a car which he illegally permitted to be operated with his dealership plates."  118 A.2d at 822 (emphasis

added).  However, the Court carefully noted that its decision "would not be in conflict with the cases [ ] which have heretofore allowed such dealer to deny *agency*, but would serve, as against the dealer . . . to establish the dealer's *ownership* in any instances (as here) where his ownership has been placed in issue."  Id. (emphasis added).  Thus, in Eggerding the Court did not overturn the line of New Jersey cases that stand for the proposition that in order for a plaintiff to hold the owner of a vehicle liable for the negligent torts of the vehicle operator, the plaintiff must demonstrate that a principal-agent relationship exists.  Spelde v. Galtieri, 130 A. 526 (N.J. 1925); Ruchlin v. A.G. Motor Sales Corp., 22 A.2d 767 (N.J. 1941); Ianuzzi v. Pub. Serv. Interstate, etc., Co., 163 A. 31 (N.J. 1932); Hayes v. Brogan Cadillac-La Salle Co., 157 A. 389 (N.J. 1931).  In this case, ownership of the 1990 Toyota pickup is not contested.  Both parties agree that Defendant Pereira owned the vehicle driven by Defendant Pereira at the time of the accident.  Plaintiff cannot survive a motion for summary judgment in New Jersey by merely arguing that the defendant owned the motor vehicle in this case.  Rather, Plaintiff must provide specific facts to show that a material issue of fact exists concerning whether at the time of the collision, Pereira was acting as an agent of PA Auto.

Next, the Plaintiff's argument fails because New Jersey courts expressly rejected the theory of liability offered by the Plaintiff.  In a nutshell, the Plaintiff argues that as a matter of public policy, the law should impute a vicarious principal-agent relationship to PA Auto and Pereira because the collision which gave rise to this litigation would not have occurred if PA Auto did not violate the New Jersey law by loaning its dealer plates to Pereira.  Br. in Opp'n to Mot. for Summ. J. of Def., PA Auto Group Enter. Corp. 10.  In Burke v. Auto Mart, Inc., the New Jersey Superior Court rejected the theory that an automobile dealership is vicariously liable for the damage caused by a vehicle bearing the dealership's license plates in violation of a state

statute governing vehicle registration.  Burke, 117 A.2d at 628.  In Burke, the Plaintiffs were the driver and passenger of a vehicle that collided with a vehicle owned by the defendant.  Id. at 625. The defendant purchased the vehicle from a used-car dealership.  Id.  The dealership loaned the defendant dealership plates in violation of a state statute.  Id. at 625-26.  After the sale, and prior to the transfer of title, the defendant was involved in an automobile accident with the plaintiff. Id. at 625.  The plaintiff argued that the dealership should be liable for any injury caused by the vehicle because the dealership unlawfully permitted an unregistered vehicle to bear its license plates in violation of a state statute.  Id.  The Court rejected this line of argument and held that the plaintiff's argument that "the accident could not have happened if [the dealership] had not illegally loaned its license plates to [the driver] indicates no more than that the loan was a condition of the accident, not that it was its proximate cause.  The [defendant driver's] negligence was an exculpating superseding cause."  Id. at 628.

Similarly, here, Plaintiff argues that Defendant PA Auto should be liable for her injuries based "upon unclean hands and the doctrine of equitable estoppel."  Br. in Opp'n to Mot. for Summ. J. of Def., PA Auto Group Enter. Corp. 5.  In effect, Plaintiff argues that because PA Auto granted Pereira permission to use its dealer plates unlawfully, PA Auto may not deny ownership of the vehicle and legal responsibility for the Pereira's negligence.  Like the defendant dealer in Burke who loaned its dealer plates to a third party in violation of a state statute, here PA Auto permitted Pereira to use its dealership plates in violation of a state law regulating vehicle registration.[2]  Defendant Pereira's allegedly negligent conduct then caused the plaintiff's injuries.  However, Plaintiff has offered no evidence to demonstrate that PA Auto's

---

[2] 75 Pa. Cons. Stat. § 1301(a) (2007) ("No person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration.").

actions were the proximate cause of her injuries.  Therefore, Plaintiff's argument that a dealership is liable for the negligent acts of a vehicle unlawfully bearing its dealer plates fails as a matter of law.

Therefore, the sole issue for this Court to decide is whether Plaintiff has provided sufficient evidence to demonstrate that there is a material issue of fact concerning whether a principal-agent relationship existed between Defendants Pereira and PA Auto at the time of the accident.  Plaintiff alleges that there is material issue of fact as to whether a principal-agent relationship existed between Defendant's Pereira and PA Auto because a "mutual business enterprise" existed between the parties.

Under the New Jersey common law, "use of an automobile upon a public highway by one who is not its owner raises a presumption of agency between the operator and the owner." Harvey v. Craw, 264 A.2d 448, 451 (N.J. Super. Ct. App. Div. 1970), certif. denied, 267 A.2d 61 (1970).  However, this presumption may be rebutted by a defendant-owner.  Id.  In order to prevent the issue of agency from reaching the jury, the owner must show "by uncontradicted testimony that no employer-employee or principal-agent relationship existed, or, if one did exist, that the employee or agent had transgressed the bounds of his authority."  Wallace v. A.R. Perine Co., 172 A. 499 (N.J. 1934); Nicosia v. Marangi, 81 A.2d 20 (N.J. Super. Ct. App. Div. 1951).

In this case, Defendant Pereira was the owner and operator of the 1990 Toyota pickup truck.  Moreover, the parties agree that PA Auto had no ownership interest in the 1990 Toyota pickup truck.  Therefore, the common law presumption of agency between the operator and owner of a motor vehicle does not apply to the facts of this case.

Even assuming arguendo that the common law presumption applies, Defendant PA Auto offered sufficient evidence to rebut this presumption.  There is no evidence that Pereira was an

employee of PA Auto, performed any services for PA Auto, or was otherwise employed by PA

Auto.  Furthermore, Defendants Pereira and PA Auto testified during pre-trial deposition that no

employee-employer relationship existed between the two parties.  Br. in Reply to Pl. and Co-

Def.'s Opp'ns to Mot. for Summ. J. Ex. A, at 5.  This is sufficient to rebut the presumption of

agency.  In response, the sole evidence Plaintiff provided to support a theory of agency is that

Defendant Pereira paid PA Auto $2,500.00 for use of the dealership plates each year for a two-

year period.  Although the fact that Pereira paid consideration for the use of PA Auto's

dealership plates may establish that a contractual relationship existed between the parties, it is

insufficient to demonstrate the basis for a principal-agent relationship.  In order to survive a

motion for summary judgment a nonmoving party must "do more than simply show that there is

some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).   Rather, the nonmoving party must "make a showing sufficient

to establish the existence of [every] element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  The nonmoving party

must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  A mere

"bargained-for" exchange between the parties with no other indicia of agency does not

demonstrate that there is a triable issue of fact concerning whether a principal-agent relationship

exists.  Because Plaintiff has failed to present a triable issue of fact regarding the issue of

agency, Plaintiff's claim fails as a matter of law.

**V.      Defendants Harris and Roos' Motion for Summary Judgment**

Roos and Harris (collectively, "Freightliner Defendants") move for summary judgment

as to Plaintiff's negligence claim.  To establish negligence, a plaintiff must prove that the

defendant had a duty of care, that the defendant breached the duty of care, and that the breach

proximately caused actual damages.  <u>Piscitelli v. Classic Residence by Hyatt</u>, 973 A.2d 948, 965

(N.J. Super. Ct. App. Div. 2009).  Freightliner Defendants surmise that because "some form of

accident would have ensued," if the Freightliner was not present, the Freightliner could not have

proximately caused the accident and summary judgment is therefore proper.  Def. br. at 6.  In

support of this conjectural argument, Freightliner Defendants point to Pereira's deposition

testimony that (1) the presence of the Freightliner did not cause him to step on his breaks and (2)

the pickup truck would have skidded over the curb and into a grassy area had the Freightliner not

been parked on the side of the road.[3]  <u>See</u> Pereira depo. 41:6-9,19-22.

Unfortunately for Freightliner Defendants, the Court is not concerned with "some form"

of hypothetical accident that did not occur.  Instead, the Court is concerned with what actually

transpired.  And at the moment, the Court is not entirely certain what occurred or why.  This is

precisely why summary judgment is improper.  As a prime example, there is a dispute as to

whether the Freightliner's hazard lights were activated at the time of the accident; Plaintiff and

Pereira claim that the hazard lights were not activated, while Harris claims he activated the

hazard lights as soon as he pulled over.  <u>Compare</u> Diaz depo. 57:21-25, <u>and</u> Pereira depo. 30:22-

25, <u>with</u> Harris depo. 29:13-25.  Plaintiff's entire argument is built upon the notion that the

accident was "proximately caused by the illegally and improperly parked Roos truck . . . and the

fact that no hazard lights were flashing on the Roos vehicle."  Pl. br. at ¶ 15.  Where the major

factual predicate of Plaintiff's negligence claim is yet to be resolved, summary judgment is

entirely improper.

---

[3] Pereira disputes the validity of this deposition testimony because he was not represented by counsel at the deposition and because he indicated at the outset of the deposition that he was not comfortable proceeding without an attorney.  Pereira argues that his testimony should therefore be stricken and a new deposition taken with counsel and an interpreter present.  However, Pereira has not so moved nor supplied any case law to support his position.

The issue of the hazard lights marks but one factual issue still in dispute.  Was the entire Freightliner parked on the shoulder of the exit ramp, or was part of it protruding into the traffic lane?  <u>Compare</u> Harris depo. 29:8-13, <u>with</u> Diaz depo. 59:25-60:2.  Did inclement weather obstruct Pereira's view of the Freightliner or make it difficult to recognize that the Freightliner was parked on the side of the ramp?  <u>Compare</u> Tomczak depo. 16:10-14, <u>with</u> Diaz depo. 57:15-17.  With these and other issues relevant to Plaintiff's negligence claim yet to be settled, this motion must be denied.


**VI.    CONCLUSION**

For the reasons expressed above, the motion for summary judgment filed by PA Auto is **GRANTED**, and the motion for summary judgment filed by Charles A. Harris and Roos Foods, Inc., is **DENIED**.  An appropriate Order shall issue today.


Date: <u>9-9-2010</u>                              /s/ Robert B. Kugler
                                        ROBERT B. KUGLER
                                        United States District Judge